UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEVEN MICHAEL HUBER,

          Plaintiff,

                    Case # 16-CV-656-FPG

v.

                    DECISION AND ORDER

NANCY A. BERRYHILL,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

   Steven Michael Huber ("Huber" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

   Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

   On November 20, 2012, Huber protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 144-56. He alleged disability since February 1, 2011 due to Chronic Obstructive Pulmonary Disease ("COPD"), sleep apnea, high blood pressure, migraines, back pain, depression, mood swings, and anxiety. Tr. 169. On June 5, 2014, Huber and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Stanley A.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2] References to "Tr." are to the administrative record in this matter.

1

Moskal, Jr. ("the ALJ"). Tr. 33-70. On October 29, 2014, the ALJ issued a decision finding that Huber was not disabled within the meaning of the Act. Tr. 13-28. On June 16, 2016, the Appeals Council denied Huber's request for review. Tr. 1-5. Thereafter, Huber commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not,

the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Huber's claim for benefits under the process described above. At step one, the ALJ found that Huber had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ found that Huber has the following severe impairments: COPD, lumbar spine disc disorder, depressive and anxiety disorders, and history of substance addiction disorder. Tr. 15-16. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 16-19.

Next, the ALJ determined that Huber retained the RFC to perform light work[3] with additional limitations. Tr. 19-26. Specifically the ALJ found that Huber can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; can stand, walk, and sit for six hours in an eight hour workday; cannot climb ropes or ladders, kneel, stoop, or squat; is limited in bending or crouching forward but can work at table or sink level; must avoid concentrated exposure to fumes, gases, dust, etc.; has minimal to no limitations following and understanding simple directions and instructions and performing simple tasks independently; and is moderately limited in maintaining attention, concentration, and a regular schedule, learning new tasks, performing complex tasks with supervision, making appropriate decisions, relating adequately with others, and appropriately dealing with stress. Tr. 19. The ALJ specifically defined the term

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"moderate" as "a moderate limitation in this area but [Huber] is still able to function satisfactorily." *Id.*

At step four, the ALJ found that this RFC prevents Huber from performing his past relevant work. Tr. 26. At step five, the ALJ relied on the VE's testimony to determine that Huber can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 27-28. Specifically, the VE testified that Huber could work as a ticket taker, garnisher, and felt tipping machine tender. Tr. 27. Accordingly, the ALJ concluded that Huber was not "disabled" under the Act. Tr. 28.

## II. Analysis

Huber argues that remand is required because the ALJ's step five finding is not supported by substantial evidence. ECF No. 10-1, at 11-15. Specifically, Huber asserts that the ALJ improperly defined the term "moderate" in his RFC assessment and hypothetical questions to the VE, and as a result the VE's testimony was unreliable. *Id.* For the reasons that follow, the Court finds that the ALJ did not err and that the step five finding is supported by substantial evidence.

At step five, the ALJ must determine whether the claimant can adjust to other work for which there are a significant number of jobs in the national economy. 20 C.F.R. §§ 404.1560(c), 416.960(c). An ALJ can make his or her step five determination by adducing VE testimony. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). The ALJ may pose a hypothetical question to the VE and rely on the VE's response "as long as there is substantial record evidence to support the assumption[s] upon which the [VE] based his [or her] opinion and accurately reflect the limitations and capabilities of the claimant involved." *Id.* (quotation marks and citations omitted).

Here, the ALJ afforded "great weight" to the opinion of consultative examiner Renee Baskin, Ph.D. ("Dr. Baskin") who opined, among other things, that Huber "would have moderate limitations being able to maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks with supervision, make appropriate decisions, relate adequately with others and appropriately deal with stress." Tr. 23-24, 397. The ALJ gave "great weight" to Dr. Baskin's opinion because it was based on Dr. Baskin's personal observations and examination findings and the ALJ found it "consistent with the substantial medical evidence of record." Tr. 24; *see* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) (the SSA will give more weight to an opinion from a medical source who examined the claimant), 404.1527(c)(3), 416.927(c)(3) (the SSA will give more weight to an opinion supported by relevant evidence), 404.1527(c)(4), 416.927(c)(4) (the SSA will give more weight to an opinion that is consistent with the record as a whole).

The ALJ's RFC assessment adopted Dr. Baskin's opinion verbatim, but it specified that the term "moderate" was defined "as a moderate limitation in this area but [Huber] is still able to function satisfactorily." Tr. 19. The ALJ provided the same definition to the VE at Huber's hearing. Tr. 63-64. Huber argues that the ALJ improperly relied on his lay opinion to define the term "moderate" and that this rendered the ALJ's step five determination unsupported by substantial evidence.

The term "moderate" is "inherently vague" and the Commissioner has not provided any "illuminating term-of-art definitions." *Reynolds v. Colvin*, No. 3:13-cv-396 (GLS/ESH), 2014 WL 4184729, at *4 (N.D.N.Y. Aug. 21, 2014). The SSA has explained that "moderately limited" means that "the individual's capacity to perform the [work] activity is impaired," but it has not specified "the degree and extent of the limitation." *Id.* at n.5 (citing Program Operations

6

Manual System (POMS) DI 24510.063, available at https://secure.ssa.gov/apps10/poms.NSF/lnx/0424510063 (last visited July 27, 2017) (effective Oct. 14, 2010 to present)). Mental limitations, unlike physical limitations, "are often categorized as 'mild,' 'moderate,' or 'severe.'" *Brown v. Comm'r of Soc. Sec.*, No. 3:15-CV-685, 2016 WL 3351021, at *7 (N.D.N.Y. June 14, 2016). Although courts have found that a doctor's use of the term "moderate" may be "too vague to constitute substantial evidence" under some circumstances, *see, e.g.*, *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), "more recent cases have held that when there is other medical evidence in addition to an RFC evaluation using terms such as 'mild' and 'moderate,' such terms may properly be used in the RFC analysis." *Brown*, 2016 WL 3351021, at *7 (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (summary order)). Although it is difficult to precisely define the term "moderate," "[i]f it is possible . . . that prerogative lies exclusively with the Commissioner or a qualified expert witness, not a reviewing court." *Reynolds*, 2014 WL 4184729, at *5 (emphasis omitted).

The Court finds that the ALJ's mental RFC assessment is supported by substantial evidence and that it was within the ALJ's discretion to define the term "moderate." Although we can only speculate what Dr. Baskin might have meant when she used the term "moderate," it is not required that the RFC assessment "perfectly correspond" with Dr. Baskin's opinion. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). Rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* The ALJ adopted Dr. Baskin's opinion in its entirety, which was proper because "an ALJ may rely on the medical opinions provided by State agency consultants" and "those opinion[s] may constitute substantial evidence." *Barber v. Comm'r of*

*Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) (citations omitted).

The objective medical evidence also supports the ALJ's mental RFC determination. Dr. Baskin noted, for example, that Huber's attention, concentration, and recent and remote memory skills were only "mildly impaired," and that he could count, perform simple calculations, recall three out of three objects immediately, and count numbers forward and backward. Tr. 396. Dr. Baskin also found that Huber's manner of relating, social skills, and overall presentation were "adequate," and that his thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia. *Id.* The ALJ also relied on treatment notes from Horizon Health Services, which repeatedly noted logical and goal directed thought processes, normal perceptions, fair to good judgment and insight, and good concentration. Tr. 24, 446, 508, 514, 520, 528, 534, 540, 546, 552-53. The ALJ also cited treatment notes indicating improvement in Huber's depression and anxiety and that "everything is going well." Tr. 24 (citing Tr. 465, 485).

Furthermore, although Huber testified that he does not like to be around a lot of people, struggles to pay attention and to get along with others, and does not deal well with stress, all of which would impair his mental ability to perform work-related activities, the ALJ engaged in a thorough credibility analysis that diminished the credibility of those statements.[4] Tr. 20, 25-26. The ALJ noted, for example, that Huber could perform most daily activities. Tr. 25; *see* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The ALJ also explained that Huber's medications did not cause any side effects, and that Huber failed to see a specialist or orthopedist for his back

---

[4] When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

pain and to comply with treatment recommendations. Tr. 25; *see* 20 C.F.R. §§ 404.1529(c)(3)(vi)-(v), 416.929(c)(3)(vi)-(v). The ALJ pointed out that Huber smelled of alcohol at doctor's appointments, tested positive for alcohol on several occasions, did not pursue recommended nutritional counseling or exercise for his obesity, and smoked a pack of cigarettes a day. Tr. 25-26; *see* 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii). Finally, the ALJ noted that Huber applied for and received unemployment insurance benefits ("UIB"), which the ALJ found "at odds with [Huber's] allegation that he was disabled." Tr. 26; *see, e.g.*, *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *8 (N.D.N.Y. Nov. 10, 2009) (noting that the ALJ may properly consider the plaintiff's UIB claim when assessing his or her credibility).

For all the reasons stated, the Court finds that the ALJ's mental RFC determination is supported by substantial evidence, specifically by Dr. Baskin's opinion, the objective medical evidence, and the credibility of Huber's statements. Moreover, the ALJ was entitled to define the term "moderate" in his RFC assessment and in the hypothetical questions posed to the VE. *See Reynolds*, 2014 WL 4184729, at *5. After reviewing the transcript of Huber's hearing, the Court finds that the hypothetical questions posed to the VE adequately reflected the RFC determination and that the ALJ was entitled to rely on the VE's responses. Tr. 62-69. Accordingly, the ALJ's step five analysis is also supported by substantial evidence.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 31, 2017
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court